﻿Citation Nr: AXXXXXXXX
Decision Date: 07/30/19 Archive Date: 07/29/19

DOCKET NO. 181217-1792
DATE: July 30, 2019

ORDER

Entitlement to service connection for an acquired psychiatric disorder, to include bipolar disorder, is granted.

Entitlement to an initial disability rating greater than 10 percent for gastroesophageal reflux disease (GERD) (also claimed as acid reflux), is denied. 

Entitlement to an initial 10 percent disability rating for shin splints of the right lower extremity is granted.

Entitlement to an initial 10 percent disability rating for shin splints of the left lower extremity is granted.

REMANDED

Entitlement to a total rating based upon individual unemployability (TDIU) due to a service-connected disability is remanded.

FINDINGS OF FACT

1. The Veteran’s acquired psychiatric disorder, to include bipolar disorder, was incurred in service or caused by any incidents therein.

2. During the appeal period, the Veteran’s symptoms of GERD did not manifest as persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health.

3. During the appeal period, the Veteran’s shin splints of the right lower extremity were manifested by painful motion.

4. During the appeal period, the Veteran’s shin splints of the left lower extremity were manifested by painful motion.

CONCLUSIONS OF LAW

1. The criteria for service connection for an acquired psychiatric disorder have been met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.04 (2018).

2. The criteria for a rating greater than 10 percent for GERD have been met. 38 U.S.C. §§ 1155, 5107(b) (2012); 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.10; 4.11, Diagnostic Code 7346 (2018).

3. The criteria for an initial 10 percent disability rating for shin splints of the right lower extremity have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 38 C.F.R. §§ 4.3, 4.7, 4.27, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5262 (2018).

4. The criteria for an initial 10 percent disability rating for shin splints of the left lower extremity have been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 38 C.F.R. §§ 4.3, 4.7, 4.27, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5262 (2018).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty from September 1998 to September 2000.

The issues come before the Board of Veterans’ Appeals (Board) on appeal from an October 2017 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO). The Veteran selected the Higher-Level Review lane when she submitted the RAMP election form in June 2018. Accordingly, the August 2018 RAMP rating decision considered the evidence of record, as of the date of the RAMP election. The Veteran timely appealed this RAMP rating decision to the Board and requested a direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

The Veteran’s claim for service connection for bipolar disorder has been recharacterized as entitlement to an acquired psychiatric disorder to include bipolar disorder. The scope of a mental health disability claim includes any mental disability that may reasonably be encompassed by the claimant’s description of the claim, reported symptoms, and the other information of record. Clemons v. Shinseki, 23 Vet. App. 1 (2009).

The Veteran has argued that in her February 2018 notice of disagreement (NOD) that the VA has not fulfilled its duty to assist her in her claims for a psychiatric disorder and shin splints. Regarding her arguments addressing the issue of service connection for an acquired psychiatric disorder, the Board is granting the benefit in full. 

In her February 2018 NOD, the Veteran stated that the VA examiner who conducted her shin splints examination failed to consider whether her knee or ankle were involved with her shin splints. The April 2017 VA examiner specifically stated that the Veteran’s shin splints did not affect the range of motion of the knees or ankles. The Veteran also stated that there was no “conversation as to severity of shin splints.” The VA examiner described the Veteran’s symptoms with detail sufficient for the Board to evaluate their severity, as discussed below. 

Although the Agency of Original Jurisdiction (AOJ) did not certify the issue of a TDIU, the Board has jurisdiction to consider entitlement to a TDIU as part of the underlying increased rating claims. Rice v. Shinseki, 22 Vet. App. 447, 453-54 (2009). A TDIU claim is considered reasonably raised when a veteran submits medical evidence of a disability, makes a claim for the highest rating possible, and submits evidence of service-connected unemployability. Roberson v. Principi, 251 F.3d 1378, 1384 (Fed. Cir. 2001).

1. Service connection for entitlement to an acquired psychiatric disorder, to include bipolar disorder, is granted.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303 (2018). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d) (2018). 

To establish service connection for the claimed disorder, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical, or in certain circumstances, lay evidence of a nexus between the claimed in-service disease or injury and the current disability. 38 C.F.R. § 3.303 (2018); Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); Hickson v. West, 12 Vet. App. 247, 253 (1999); Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). The requirement of a current disability is “satisfied when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim.” McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). 

The Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). The evaluation of evidence generally involves a three-step inquiry. First, the Board must determine whether the evidence comes from a “competent” source. The Board must then determine if the evidence is credible, or worthy of belief. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007). The third step of this inquiry requires the Board to weigh the probative value of the proffered evidence considering the entirety of the record. 

Reasonable doubt is resolved in favor of the veteran when there is an approximate balance of positive and negative evidence. When a veteran seeks benefits and the evidence is in relative equipoise, the veteran prevails. 38 U.S.C. § 5107 (2012); 38 C.F.R. § 3.102 (2018); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The preponderance of the evidence must be against the claim for benefits to be denied. Alemany v. Brown, 9 Vet. App. 518 (1996).

The Veteran contends that her acquired psychiatric disorder was incurred in service. 

The Veteran’s service treatment records (STRs) show an April 1999 entry where the following is noted: “This [Veteran] was seen for Intake/Screening Interview at Division Mental Health Services. Further information can be found on the clinic’s confidential files. Access to this information will be on a ‘need to know’ basis authorized the U.S. Army Clinic, Schofield Barracks …”

The STRs also contain an August 2000 Report of Mental Status which reports the following: “normal behavior; fully alert; unremarkable mood or affect; normal thought content; and good memory.” The author in the “Remarks” section, referred the reader to “Chapter 8.”

In a Report of Medical Examination dated in August 2000, the Veteran indicated that she was in “good health;” the purpose of her examination was for a “Chapter 8” discharge; and “yes” to the question of her having frequent trouble sleeping. The examining clinician noted that the Veteran was pregnant and due in February but was “already being followed by Ob-Gyn [for] complications.” Further, the clinician checked “normal” in response to the Veteran’s psychiatric/personality deviation, in the Clinical Evaluation section. 

The Veteran’s post-service treatment records contain both VA and private treatment notes. Private progress Notes from Monroe Clinic dated in April 2010, wherein the Veteran reported for a psychiatric assessment. She reported having a “breakdown” in November 2009 after the August birth of her baby whom she immediately gave up for adoption. She reported that her symptoms were paranoia, auditory and visual hallucinations, and at the time she was taking Paroxetine, which she originally started for anxiety when she lived in Memphis, TN. She also reported that the was the “first episode in which she has ever had psychotic symptoms.” 

Progress Notes dated in February 2016, from Monroe Clinic, also indicate a Patient Active List, revealing a diagnosis of attention deficit disorder (ADD), which was noted in July 2010; bipolar disorder, with the most recent episode unspecified and noted in March 2010; and anxiety state, for which she started treatment with Paxil in 2005.

VA treatment notes indicate that in May 2012, the Veteran received a referral from Monroe Clinic, to receive mental health treatment at a VA facility. It was also indicated that the Veteran was a domestic violence survivor. Subsequent VA treatment records indicate a diagnosis of bipolar affective disorder, anxiety disorder, and ADHD.

The Veteran was afforded a VA examination in October 2016. The examiner diagnosed bipolar I disorder and noted that the Veteran did not have any other diagnosed mental disorders. The examiner also noted that the Veteran’s level of occupational and social impairment was a total occupational and social impairment. Additionally, the examiner noted that the Veteran’s relevant health history included a letter from her treating VA psychiatrist, Dr. L. G., dated in July 2016, stating that “[d]uring her initial manic/psychotic episode, in 2011, she had an involuntary hospitalization …. She had two subsequent voluntary hospitalizations.”

In December 2016, the Veteran’s VA treating psychiatrist provided a positive nexus, opinion, linking her bipolar disorder to service. Dr. L. G. states:

During her tour, in July 1999, she became severely depressed and agitated. She expressed suicidal ideation and was seen at the medical clinic on post. Later that year, she was depressed and developed the delusion that people were trying to drug her, but she tried to be stoic and didn’t tell anyone. She had severe depressive exacerbations in 2004 and 2007, both with psychotic symptoms. She had her first manic episode in 2010, with five subsequent hospitalizations, voluntary and involuntary, for manic episodes with psychosis. Her episodes of depression and mania, psychotic symptoms, and recurrent hospitalizations impair her ability to maintain gainful employment and have had ruinous consequences on her relationships. Bipolar disorder is characterized by episodes of depression and episodes of mania. It is far more likely than not that her current bipolar disorder is related to her depressive episode in the service.

To address the etiology of her acquired psychiatric disorder, VA requested a medical opinion DBQ examination in April 2017. The examiner reviewed the Veteran’s medical records using the Acceptable Clinical Evidence (ACE) process and found no nexus to service. He provided the following rationale:

… the only note of psychiatric symptoms located was a notation of “frequent trouble sleeping” noted to be “since November 1999” as of August 04, 2000. Other complaints noted at that time included “painful hip and knee joint” present since May 1999 and “recurrent back pain” present since October 1999. In the report of medical history from August 2000, the Veteran denied the current or past history of depression or excessive worry, denied nervous trouble of any short, and denied the current/history of suicide attempt or plan. Based on the evidence of record, I would have to resort to mere speculation as to whether the sleep complaints noted in 1999-2000 were related to her later diagnosed mood disorder… The only evidence I can find is sleep complaints which were also co-occurring during complaints of pain (back, hip, and knee) and it appears to be several years after the service until the first documented evidence of mood disorder symptoms… In summary, with the isolated complaint of sleep occurring also in the context of documented chronic pain issues and no records citing sleep or mood concerns for apparently several years after that, I would have to resort to speculation as to whether the complaint of sleep disturbance in service is related to her current diagnosis of bipolar disorder.

The Board notes that the April 2017 VA medical opinion addressed the competent evidence of record and provided a thorough rationale, as well as addressed the conflicting evidence of record. Although the examiner stated that he would need to resort to speculation to provide an opinion, an opinion is adequate if the examiner provides a reason why a non-speculative opinion could not be rendered. Jones v. Shinseki, 23 Vet. App. 382 (2010). Nonetheless, the Board affords the opinion a low probative value because the examiner stated that he could not provide an opinion without resorting to mere speculation, even though he explained why. 

Based on the evidence presented above, the Board affords the medical of opinion Dr. L. G. the most probative in a finding that the Veteran acquired psychiatric disorder was incurred in service or a result of incidents therein. As the opinion meets the requirement for the nexus element of a service connection claim, service connection for an acquired psychiatric disorder is granted. 38 U.S.C. § 5107 (b) (2012); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

2. Disability Ratings

Disability ratings are determined by applying the criteria established in VA’s Schedule for Rating Disabilities, which is based upon the average impairment of earning capacity. Individual disabilities are assigned separate Diagnostic Codes. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 4.1, 4.20 (2018). When a question arises as to which of two ratings applies under a particular Diagnostic Code, the higher evaluation is assigned if the disability more nearly approximates the criteria for the higher rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 (2018). After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the claimant. 38 C.F.R. § 4.3 (2018). 

Consideration must be given to increased evaluations under other potentially applicable Diagnostic Codes. Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). Furthermore, when it is not possible to separate the effects of the service-connected disability from a non-service-connected condition, such signs and symptoms must be attributed to the service-connected disability. 38 C.F.R. § 3.102 (2018); Mittleider v. West, 11 Vet. App. 181, 182 (1998) (per curiam). 

Staged ratings are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007) (citing Fenderson v. West, 12 Vet. App. 119, 126 (1999)). 

The evaluation of evidence generally involves a three-step inquiry. First, the Board must determine whether the evidence comes from a competent source. Second, the Board must decide if the evidence is credible. Barr v. Nicholson, 21 Vet. App. 303, (2007). Third, the Board must weigh the probative value of the evidence considering the entirety of the record. 

A. Entitlement to an initial disability rating greater than 10 percent GERD, is denied. 

The Veteran in her February 2018 NOD contends that a higher rating, at least 60 percent, is warranted for her GERD, since the examiner reported her vomiting and weight loss.

There is no Diagnostic Code for GERD. Thus, the RO rated the Veteran’s disability analogously to hiatal hernia under the Schedule of Ratings for the Digestive System. 38 C.F.R. § 4.114, Diagnostic Code 7346. Under Diagnostic Code 7346, a 10 percent evaluation is warranted when there are two or more of the symptoms required for a 30 percent evaluation, but with less severity. A 30 percent evaluation is warranted when there is persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health. A 60 percent evaluation is warranted when there are symptoms of pain, vomiting, material weight loss and hematemesis or melena with moderate anemia; or other symptom combinations productive of severe impairment of health. 38 C.F.R. § 4.114 (2018). 

The Veteran was afforded a VA Esophageal Conditions DBQ examination in April 2017. The Veteran reported first developing reflux while serving in the Army. The examiner found that the Veteran had “infrequent episodes of epigastric distress,” dysphagia, reflux, regurgitation, sleep disturbance, loss of ten pounds, and vomiting three times per year. The examiner opined that the Veteran had severe GERD disease that is refractory to medical treatment. 

Private treatment notes from the Monroe Clinic indicate that the Veteran, as recently as January 2016, complained of a constant tickle in her throat and some reflux symptoms. The clinician noted that the Veteran had reflux pharyngitis. She was advised that sometimes reflux can exacerbate asthma.

Upon review of the evidence, the Board finds that the Veteran’s symptomatology during the appeal period for her GERD disability falls within the 10 percent criteria. Her symptoms included infrequent episodes of epigastric distress, dysphagia, reflux, regurgitation, and sleep disturbance caused by esophageal reflux. The frequency of her recurrent symptoms was noted as four times or more per year, with the average duration of episodes of symptoms, lasting less than one day. The material weight loss was 10 pounds, and the vomiting frequency episodes was three times per year. 

The Veteran is competent to report her symptoms. The Board has considered her statements, including her noted weight loss. For purposes of evaluating conditions in 38 C.F.R. § 4.114, the term “substantial weight loss” means a loss of greater than 20 percent of the individual’s baseline weight, sustained for three months or longer; and the term “minor weight loss” means a weight loss of 10 to 20 percent of the individual’s baseline weight, sustained for three months or longer. The term “Baseline weight” means the average weight for the two-year period preceding onset of the disease. 38 C.F.R. § 4.112 (2018). The VA examiner reported a 10-pound weight loss, from the baseline weight of 145. Here, there is no competent medical evidence of record that the Veteran was sustained a material weight loss. At most, her 10-pound weight loss is best defined as minor. 

Additionally, while the Veteran’s reports vomiting, she has not indicated that said symptom was in addition to pain, hematemesis or melena with moderate anemia, nor has she indicated other symptom combinations productive of severe impairment of health. The Board also notes that there is no competent evidence to showing that the Veteran’s GERD meets the criteria for the higher rating.

The Board finds that the Veteran’s disability picture her GERD manifests as less severe than the 30 percent criteria and is not more closely approximated thereby. Her symptoms have not been accompanied by substernal or arm or shoulder pain, nor were they deemed productive of considerable impairment of health. Additionally, her epigastric distress was described as “infrequent,” which is of a lesser degree of severity than the “persistently recurrent epigastric distress” contemplated by the 30 percent criteria. Although the April 2017 VA examiner opined that the Veteran had severe GERD disease, the examiner also noted it would not impact her ability to work. 

There is also no evidentiary basis upon which to assign a rating greater than 10 percent, for her GERD disability, and since there is no basis for assigning an increased rating, there is no basis for assigning a staged rating. Hart, 21 Vet. App. at 505. Accordingly, the preponderance of the evidence is against an increased evaluation greater than 10 percent for GERD disability and must be denied. 38 C.F.R. § 4.71a, Diagnostic Code 5261 (2018). Thus, the benefit of the doubt rule is not for application. 38 U.S.C. § 5107 (b) (2012); Gilbert, 1 Vet. App. 49, 54-56 (1990).

Accordingly, the preponderance of the evidence is against an increased evaluation greater than 10 percent for GERD and the claim is denied. 38 C.F.R. § 4.71a, Diagnostic Code 5262 (2018).

B. Entitlement to an initial disability rating of 10 percent for right lower extremity shin splints is granted.

C. Entitlement to an initial disability rating of 10 percent for left lower extremity shin splints is granted.

The Veteran contends that she is entitled to at least a 10 percent for each of her lower extremity bilateral shin splints disability. In her February 2018 NOD, she stated that although the examiner indicated on the April 2017 VA examination that her joints are not affected by her bilateral shin splints, her knees hurt.

Currently, her bilateral shin splints are rated noncompensable under Diagnostic Code 5262, pertaining to impairment of the tibia and fibula. A 10 percent disability rating is assigned for malunion with slight knee or ankle disability, and a 20 percent disability rating is warranted for malunion with moderate knee or ankle disability. A 40 percent disability rating is appropriate where there is nonunion of the tibia and fibula with loose motion requiring a brace. 38 C.F.R. § Diagnostic Code 5262 (2018). 

Evidence of pain weakened movement, excess fatigability, or incoordination must be considered in determining the level of associated functional loss in light of 38 C.F.R. § 4.40, taking into account any part of the musculoskeletal system that becomes painful on use. DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions regarding the avoidance of pyramiding do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including flare-ups. 38 C.F.R. § 4.14 (2018).

The provisions of 38 C.F.R. § 4.59, which relate to painful motion, are not limited to arthritis and must be considered when raised by the claimant or when reasonably raised by the record. Burton v. Shinseki, 25 Vet. App. 1 (2011).

The Veteran underwent a VA Knee and Lower Leg Conditions DBQ in April 2017. The examiner diagnosed bilateral shin splints.

The Veteran reported first experiencing shin splints after running while in basic training in 1998. She continued to have shin splints with walking, gardening or hiking on uneven terrain. She limits her exercise to indoor treadmill due to shin pain. Since discharge from the military, she has gone to see her primary care provider at Monroe Clinic for ongoing shin pain.

The Veteran reported having had flare-ups of the bilateral shins, described as pain with any strenuous activity which involved using her lower extremities.

The Veteran also reported having had a functional loss or functional impairment of the bilateral lower extremity, including but not limited to repeated use over time, evidenced by the inability to run, walk or hike more than a mile, or stand for more than two hours without developing intolerable pain in her shins.

The initial range of motion (ROM) testing of the knees, revealed normal ROM. The forward flexion registered 140 to 0 degrees, while the extension registered 0 to 140 degrees. Pain was not noted on either the flexion or the extension; nor was it noted on palpitation of the joint or soft tissue or with weightbearing. There was no objective evidence of crepitus. The Veteran was able to perform repetitive-use testing with three repetitions. There was no additional functional loss or ROM after three repetitions, bilaterally. 

Addressing additional contributing factors of her bilateral leg disability, the examiner noted the Veteran was unable to run, walk or hike more than a mile, or stand for more than two hours without developing intolerable pain in her shins. Muscle strength, on both the right and left knees, was normal, 5/5, without a reduction in muscle strength. Muscle atrophy was not noted.

The examiner noted that the Veteran did not have ankylosis of either the right or left knee joints, nor was there a history of recurrent subluxation, or recurrent effusion. Joint instability tests were not performed. 

The examiner noted the Veteran’s history of bilateral shin splints (medial tibial stress syndrome). He noted that the condition did not affect the ROM of knees or the ankles. The Veteran’s current symptom was pain with running. 

Regarding the impact of her shin splints disability on her ability to work, the examiner noted that there was an inability to run, walk or hike more than a mile, or stand for more than two hours without developing intolerable pain in her shins.

The examiner remarked that regarding the Veteran’s bilateral shin splints, there was no evidence of pain upon the passive range of motion testing or weightbearing. He explained that shin splints affect the muscles and connective tissues, not the joints. Regarding testing of the opposing undamaged joint, the examiner noted that it was not applicable. 

Based on the evidence presented above, the Board finds that the Veteran’s bilateral lower extremity shin splints manifested in painful motion as evidenced by her complaints of inability to run, walk or hike more than a mile, or stand for more than two hours. During the pendency of the appeal, however, the record including the April 2017 VA examination and lay statements, do not reflect malunion with slight knee or ankle disability, as required by the 10 percent criteria under Diagnostic Code 5262. 

However, as the Veteran’s bilateral lower extremity shin splints manifested in painful motion, a 10 percent rating is warranted for each lower extremity. 38 C.F.R. § 4.59 (2018). 

The criteria for a higher disability rating is not met. The competent evidence of record does not show moderate knee or ankle disability. Thus, the Board finds that the Veteran’s bilateral lower extremity shin splints disability picture has not more nearly approximated the criteria for the 20 percent rating under Diagnostic Code 5262. There is also no evidentiary basis upon which to assign a rating greater than 10 percent, for bilateral lower extremity shin splints disability, and since there is no basis for assigning an increased rating, there is no basis for assigning a staged rating. Hart, 21 Vet. App. at 505. 

Accordingly, the preponderance of the evidence is in favor of increased evaluation of 10 percent for shin splints of the right lower extremity and shin splint of the left lower extremity. The claims are granted. 38 C.F.R. § 4.71a, Diagnostic Code 5262 (2018).

REASONS FOR REMAND

1. Entitlement to a TDIU is remanded.

The Board herein grants service connection for an acquired psychiatric disorder and awards a 10 percent rating for shin splints of the right lower extremity and 10 percent for shin splints of the lower left extremity. However, as the grants have yet to be implemented by the AOJ, the issue of entitlement to a TDIU is remanded so that the AOJ can assign the disability ratings for the Veteran’s acquired psychiatric disorder and bilateral shin splints. As the assignment of the ratings will have a substantial impact on the TDIU claim, it must be remanded. 

Accordingly, the matter is REMANDED for the following action:

1. Implement the Board’s grant of service connection for an acquired psychiatric disorder and increased ratings for shin splints of the right and left lower extremities.

2. Provide the Veteran with a VA Form 21-8940 (Veteran’s Application for Increased Compensation Based on Unemployability) and employment verification forms and request that she complete, and return said forms.

3. Then, adjudicate the TDIU claim.

 

D. Martz Ames

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board N. Stevens, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.